UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | |
|---|---|
| LC JACKSON<br>   *Plaintiff*<br>v.<br>BOTTLING GROUP, LLC<br>   *Defendant* | CASE NO: 1:12cv23490<br><br>**COMPLAINT**<br>**JURY TRIAL DEMAND** |

## COMPLAINT

Plaintiff, LC Jackson, by and through his undersigned counsel, hereby brings suit against Bottling Group LLC and states as follows:

### I. PRELIMINARY STATEMENT

Plaintiff LC Jackson ("Plaintiff" or "Jackson") brings this action for damages against Defendant Bottling Group LLC D/B/A Pepsi Bottling Group ("Pepsi") for actual damages, costs and attorney's fees for unlawful employment practices. Jackson, a black male, brings this action for race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., as amended ("Title VII").

1

## II. PARTIES

1. Plaintiff LC Jackson is a black male who is a citizen of the state of Florida and resides in Miami-Dade County.
2. Defendant Bottling Group LLC D/B/A Pepsi Bottling Group is a Delaware limited liability company.  Defendant is a national corporation that maintains operations in Doral, Florida.

## III. JURISDICTION AND VENUE

3. This is an action against Defendant for race discrimination under Title VII.
4. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.
5. Venue lies in this District pursuant to 28 U.S.C. § 1391(b).

## IV. FACTUAL BACKGROUND

6. Plaintiff was hired by Defendant on February 22, 2011 as a loader in their Doral, Florida facility.  His principal responsibility at Pepsi was to load pallets of beverages onto trucks utilizing a forklift.
7. The Doral facility employs a workforce that is overwhelmingly Hispanic.
8. The employees who worked on Jackson's shift were overwhelmingly Hispanic.
9. All or all but one of the supervisors on his shift were Hispanic.
10. The Doral facility is effectively run as a Hispanic good old boys club.
11. Hispanic employees are given more favorable treatment than the handful of black employees at the facility.
12. Beginning in approximately March 2012, shortly after his hire, Jackson experienced difficulties with a Hispanic supervisor named Hector, who referred to Jackson as a "nigger."

13. Jackson spoke to his union representative about Hector's racist remarks his general sense that black loaders were mistreated.
14. Jackson was subsequently offered the opportunity to file a grievance regarding this conduct.  Fearing for his job, Jackson declined.
15. Hector subsequently left the Doral facility and, on information and belief, was relocated to another Pepsi facility.
16. Throughout Jackson's tenure at Pepsi, he and the handful of other black employees at the Doral location have repeatedly been subjected to different treatment than their Hispanic colleagues.
17. This differential treatment is based on race.
18. The Doral facility operates according to a seniority system based on union rules.  This system applies to black employees, but Hispanic employees are exempt from it.
19. Black employees at the Doral facility are subject to selective discipline and write-ups based on their race.
20. According to the collective bargaining agreement that governs the employees at the Doral facility, employees in the loader position are not subject to any numerical requirements regarding the number of cases they must load onto trucks each hour.
21. Union leaders for the Doral facility rejected any cases per hour requirement because the measure is essentially meaningless.
22. Cases per hour can easily be manipulated by various forms of gaming the system.
23. A pallet of a certain type may have far more cases than a pallet of another type.

3

24. Likewise, a loader can manipulate his average cases per hour by clocking in and out of the system that tracks time for cases per hour (but not time on the job).

25. In short, the measure is meaningless and no cases per hour requirement exists at the Doral facility.

26. In spite of the absence of any such requirement, Hispanic supervisors at the facility have written-up employees for failing to load a sufficient number of cases per hour.

27. Although black employees have historically represented only a small percentage of the workforce at the Doral facility, they receive a dramatically disproportionate share of write-ups for violations of a non-existent cases per hour requirement.

28. In fact, a majority of black employees at the Doral facility have been written up for cases per hour violations.

29. This requirement – which does not exist – is used as a tool to selectively harass black employees.

30. On June 19, 2012, events transpired at the Doral facility that resulted in Jackson's termination from Pepsi.

31. On that day, Oscar Perez, a Hispanic supervisor who managed Jackson, followed Jackson to the men's bathroom and verbally harassed Jackson while he was using the urinal.

32. Jackson attempted to remove himself from the confrontation, exited the men's room, and walked back to his forklift so that he could continue working.

33. Upon exiting the men's room, while standing in front of the entrance to the break area, Jackson was again confronted by Oscar Perez and another Hispanic employee Jouse.

34. Jackson told Oscar and Jouse to leave him alone, climbed aboard his forklift and drove away to continue working.
35. Several days later, on June 29, 2012, Jackson was written-up for the incident, in which he supposedly threatened Oscar Perez with a forklift and attempted to run him over with it.
36. According to the disciplinary report, Jackson had allegedly violated Pepsi's "Workplace Violence Policy."   He was terminated that same day.
37. In spite of this supposed threat with a deadly weapon, no action was immediately taken on June 19th, the date that the alleged incident occurred.
38. The police were never called.  Jackson was never escorted out of the building.  Jackson was never even asked to leave the building.
39. In fact, Jackson continued on at Pepsi for several days before a formal disciplinary report was filed.
40. The alleged forklift "threat" was manufactured by Oscar Perez after the fact and used as an excuse to terminate Jackson.
41. The alleged basis for Jackson's termination is a blatant lie.
42. Meanwhile, Hispanic employees who actually have made violent threats against other employees have been given "last chance letters" or opportunities to correct behavior that violates the company's Workplace Violence Policy.
43. Notwithstanding the fact that the alleged threat is a complete fabrication, Jackson was not given a "last chance letter" because he is black and not a part of the Hispanic good old boy network.
44. After losing his job at Pepsi, Jackson sought to collect unemployment.
45. Pepsi responded to Jackson's application for unemployment by indicating that Jackson had been terminated for "insubordination."

46. After being fired and receiving a notice that clearly indicated that he was terminated for making violent threats and/or attempting to assault Perez, a curious thing happened:  Jackson was contacted by Pepsi and ordered to attend Pepsi's "Healthy Living Program" to receive therapy for anger and stress management.

47. Not knowing what to do, Jackson complied with the instructions, attended anger management therapy at the Helping Place, a clinic in Pembroke Park, where he met with Howard Chusid, a Board Certified Professional Counselor.

48. Upon meeting with Jackson for several hours and evaluating him, Chusid concluded that Jackson was "calm", demonstrated a "lower average level of anger" and did not require anger management courses.

49. Subsequently, when Jackson contacted Pepsi regarding the anger management course that he had strangely been ordered to attend post-firing, **he was told that his employment had not been terminated and that he was simply "on leave."**

50. In short, Jackson received less favorable treatment than Hispanic employees at the Doral facility.

51. Jackson – like other black employees – was subject to different disciplinary policies than similarly situated Hispanic employees.

52. Hispanic employees were given more favorable treatment because they shared the same race, background, culture and language as most of their supervisors.

53. Jackson's mistreatment during his tenure at Pepsi and his eventual termination was racially motivated.

54. Hispanic supervisors at Pepsi fabricated an excuse – the supposed fork lift threat – to justify Jackson's firing.

55. In response to Jackson's filing for unemployment benefits, Pepsi changed its story from a violent threat to general insubordination.

56. Subsequently, Pepsi attempted to cover up the fact that Jackson was fired for racially motivated reasons by covertly rescinding his termination and classifying Jackson as being "on leave" and ordering him to anger management classes.

57. Prior to filing the instant action, Jackson has satisfied all of the procedural and administrative requirements set forth in Title VII.

58. Jackson filed a timely charge of discrimination with the EEOC and has received a "Notice of Right to Sue" from the EEOC.

59. The complaint in this action was filed with this Court within 90 days of Jackson's receipt of the Notice of Right to Sue.  (*See* Exhibit A).

## COUNT I
## RACE DISCRIMINATION

60. Plaintiff incorporates by reference paragraphs 1 to 56 as if fully set forth herein.

61. Plaintiff is an African American, a member of a protected class as the term is defined in 18 U.S.C. § 1981.

62. Defendant either knew or should have known that its supervisors in the Doral Pepsi facility engaged in illegal employment practice and maintained an environment in which Hispanic employees were given favorable treatment and black employees given less favorable treatment.

63. Plaintiff was subject to said illegal employment practices and was disciplined and eventually terminated because of his race.

64. Defendant's conduct is in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §. 2000e, et seq.

7

65. As a result of the Defendant's actions, Jackson has been forced to hire the undersigned and pay him a reasonable fee, which he is entitled to recover pursuant to 42 U.S C §2000e-5.

66. Jackson is further entitled to legal and equitable relief as set forth in Title VII. including but not limited to compensatory damages, back pay, front pay, and all other relief necessary to make him whole.

WHEREFORE, Plaintiff requests that:

a) The Court grants Plaintiff judgment against Defendant for an amount to be determined by jury.
b) The Court awards Plaintiff reasonable attorney's fees and costs.
c) The Court awards Plaintiff such other and further relief as it deems just and proper under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests a jury trial for all issues so triable.

Dated: September 25, 2012              Respectfully Submitted,

Jonathan E. Pollard
Attorney for Plaintiff
401 E. Las Olas Blvd. #1400
Fort Lauderdale, FL 33301
Phone: 954-332-2380
Fax:  866- 594-5731
jpollard@pollardllc.com

_____
Jonathan E. Pollard
Florida Bar # 83613

8

# EXHIBIT A

EEOC Form 161 (11/09)     **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

To: Lc Jackson
560 N.W. 183rd Street
Miami Gardens, FL 33169

From: Miami District Office
2 South Biscayne Blvd
Suite 2700
Miami, FL 33131

[ ] *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 510-2012-04256 | DAVID LEGRAND, Investigator | (305) 808-1764 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[X] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[ ] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

MALCOLM S. MEDLEY,
District Director

JUL 1 6 2012
*(Date Mailed)*

Enclosures(s)

cc: **Respondent Representative:**

PEPSICO
7777 N.W. 41st
Doral, FL 33166